UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL HINES, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-1251 (VLB) |
| CITY OF BRISTOL, | : | |
| JOHN DIVENERE, EDWARD SPYROS, | : | |
|     Defendants. | : | March 13, 2008 |

## MEMORANDUM OF DECISION AND ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. #26]

The plaintiff, Paul Hines, a Bristol Police Department ("BPD") officer, brings this case arising out of events triggered by a police incident in March 2004 against the defendants, the City of Bristol ("the city"), chief of police John DiVenere, and lieutenant Edward Spyros, alleging 1) that DiVenere retaliated against him for exercising his right to freedom of speech pursuant to 42 U.S.C. § 1983 and 2) that Spyros acted negligently in conducting an internal affairs investigation. He also claims indemnity for the individual defendants acts from the city pursuant to Connecticut General Statutes § 7-465.[1] Presently pending before the court is the defendants' motion for summary judgment. For the reasons hereinafter set forth, the motion for summary judgment is GRANTED.

---

[1] The complaint included additional claims that DiVenere and the city acted negligently and that Spyros defamed Hines. In his memorandum of law in opposition to this motion Hines indicated that he longer is pursuing these claims. [Doc. #40, n. 1] By way of this order, the court accepts Hines' withdrawal of those claims.

1

## I. Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely

asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

## II. Facts

The following facts relevant to this motion are undisputed unless noted otherwise. Hines joined the BPD in 1979 as a patrol officer. In 1994, he was promoted to sergeant, after taking the sergeant's exam three times. At all times relevant to this case, DiVenere was chief of the BPD. In 1996, Hines and DiVenere discussed the level of training for the BPD emergency response team ("ERT"). Hines opined that the ERT required a trained negotiator. DiVenere agreed and sent Hines for negotiator training. This was the only discussion between Hines and DiVenere regarding officer training prior to March 2004. In 2001 and 2002,

Hines discussed with BPD lieutenants Estes, Leone, DeKow and Kirschner his perception that non-ERT members of the BPD lacked training in de-escalation techniques. The conversations were informal and usually took place during the course of a shared work shift. There is no evidence that any of the lieutenants relayed their conversations with Hines to DiVenere, nor that DiVenere had any knowledge of Hines' opinions about officer training prior to this lawsuit.

On March 8, 2004, Hines was the supervising on-cite officer in response to a distress call reporting that a disturbed individual had locked himself inside a house with a weapon. As the supervising officer, Hines directed the activities of his subordinate officers until the situation was resolved. Shortly after the incident, DiVenere heard rumors that some officers were concerned with Hines' handling of the distress call, specifically that he unnecessarily placed himself and other officers in harms way. BPD captain Britt approached DiVenere and reported that he had heard similar rumors. DiVenere does not recall the origins of these rumors. DiVenere directed Britt to further investigate the nature of the rumors. After a few days, Britt recommended to DiVenere that he launch an internal affairs investigation into the matter.

DiVenere authorized an investigation and assigned Spyros to conduct it. Spyros' April 6, 2004, investigation report concluded that Hines violated three sections of the BPD code of conduct and recommended that DiVenere conduct a disciplinary hearing. A disciplinary hearing was held on May 10, 2004. Hines, Britt, and the union president, grievance chairman and a union attorney attended

4

the hearing. During the hearing, Hines questioned the accuracy of Spyros' report. Following the hearing, DiVenere issued Hines the sentence recommended by the union attorney, a two day suspension. DiVenere removed Hines as the ERT negotiator. On July 6, 2004, Hines filed a grievance challenging the suspension as excessive under the union's collective bargaining agreement. DiVenere agreed to reduce the suspension to a written reprimand. In February 2005, Hines requested an investigation into the manner in which Spyros conducted the internal affairs investigation, claiming that the report contained factual inaccuracies. DiVenere conducted an independent review of Spyros' conduct including written statements by Spyros and Hines. DiVenere dismissed Hines' complaints as groundless. He did not open an internal affairs investigation into the matter.

Hines recalls voicing complaints to DiVenere, Britt, the mayor, and the BPD personnel director in the context of his ongoing disciplinary proceedings resulting from Spyros' report, claiming that Spyros' report was improperly investigated and drafted. He also claimed he was unfairly disciplined for his actions while improperly trained officers were contemporaneously praised for their conduct in an unrelated incident involving a civilian death. Neither DiVenere nor the personnel director recall speaking with Hines. Neither side presented any evidence regarding Hines' conversations with Britt nor the mayor.

In June 2005, the BPD conducted a promotional exam for the position of detective sergeant. Hines was one of four BPD officers who took the exam. The

exam has three components: 1) a written section; 2) an oral section; and 3) DiVenere's evaluation. Hines scored the highest out of the four candidates on the written and oral sections of the exam, but received the lowest mark from DiVenere's evaluation. DiVenere also requested that eleven BPD supervisors each evaluate the four candidates and recommend two candidates for promotion. Hines received only four out the twenty two available supervisor recommendations. Hines had no negative interactions with or opinions of any of the eleven supervisors other than Spyros.

Two of the four applicants were promoted to detective sergeant. Hines' cumulative exam score placed him third and he was not promoted. The two officers promoted received nine and eight supervisor recommendations respectively and scored the highest on DiVenere's evaluation. They each had no prior disciplinary record and extensive narcotics enforcement experience, working either frequently or exclusively with the BPD narcotics unit. A detective sergeant may be assigned to supervise a narcotics unit. Hines had two disciplinary infractions on his record in addition to Spyros report following the distress call, one for conduct unbecoming an officer and one for failure to supervise. He had no prior experience with the narcotics unit. The two promoted officers were in all respects qualified for the position.

### III. Discussion

#### A. First Amendment

6

Hines alleges that DiVenere retaliated against him for speaking out about the lack of de-escalation techniques training in the BPD by disciplining him in the aftermath of the distress call and failing to promote him to detective sergeant. The defendants move for summary judgment because Hines' speech did not address a matter of public concern and there is no evidence that Hines' speech was a motivating factor in DiVenere's decisions regarding Hines' employment. The defendants also claim that DiVenere would have made the same decisions regardless of Hines' speech.

"In order to establish a First Amendment retaliation claim, plaintiffs must prove that: (1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action;[2] and (3) the speech was a motivating factor in the adverse employment decision." Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006). "If a plaintiff makes this required showing, defendants may nevertheless escape liability if they can demonstrate that . . . the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech." Id.

1. Matter of Public Concern

"The question of whether certain speech enjoys a protected status under the First Amendment is one of law, not fact. Central to this inquiry is whether the

---

[2]The defendants do not contest that Hines suffered adverse employment actions.

7

speech may be fairly characterized as constituting speech on a matter of public concern.  As a general rule, speech on any matter of political, social, or other concern to the community is protected by the First Amendment."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (citing Connick v. Myers, 461 U.S. 138, 146, 148 (1983)).

"In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).  "The manner, time, and place in which the speech occurs is important in determining whether it is protected."  Id. at 162 (internal quotations omitted).  "[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of a public employee's comments could be construed broadly to implicate matters of public concern."  Ruotolo v. City of New York, 514 F.3d 184, 190 (2d Cir. 2008) (quoting Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991)).  The mere fact that a plaintiff spoke to supervisors rather than publicly airing his grievances does not strip him of First Amendment protection.  See Garcetti v. Ceballos, 547 U.S. 410, 420-21 (2006).

Hines' conversation with DiVenere regarding the need for a trained ERT negotiator and his conversations with the four lieutenants noting the need for non-ERT member training in de-escalation techniques clearly address a matter of

public concern. Police officer training for and handling of the most dangerous and public situations, such as Hines' stand-off with a disturbed and armed man, bear on the well-being of the community as a whole and affect the lives of every citizen. The simple fact that the conversations were not formal complaints or were not conducted with individuals outside the BPD do not deprive Hines of the protections afforded by the First Amendment. See Ciofi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 165 (2d Cir. 2006) (letter sent by athletic director privately to board of education members protected by First Amendment). These conversations are entitled to First Amendment protection.

Hines complaints to DiVenere, Britt, the mayor and the personnel director in the course of his disciplinary proceedings and his request for an investigation into Spyros' conduct do not address a matter of public concern. Those statements were made in the context of his individual employment dispute and were motivated by a sense of self preservation.[3] Hines attempts to tie these complaints to their potential repercussions on everyday citizens. However, the remote possibility that speech could affect others does not change the fact that Hines was speaking at the time about an entirely personal situation in the context of his employment dispute and not as a citizen on a matter of public concern. See Lewis, 165 F.3d at 164; Ruotolo, 514 F.3d at 190. Despite Hines' argument in

---

[3]It should be noted that there is scant evidence that these conversations with DiVenere, Britt, the mayor or the personnel director, as opposed to Hines' formal complaint against Spyros, ever took place, let alone evidence detailing their timing, content or form.

9

opposition to this motion, there is no evidence to support the proposition that his comments in the course of the disciplinary proceedings were meant to address a systematic failure in the BPD, as opposed to his own personal situation. These conversations are not protected by the First Amendment.

## 2. Causation

"The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." Morris, 196 F.3d at 110. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Id. A showing of retaliatory animus requires the plaintiff to submit tangible proof that protected speech was a substantial motivating factor in the defendant's actions. The plaintiff cannot rely on conclusory assertions of motive. See Washington v. County of Rockland, 373 F.3d 310, 321 (2d Cir. 2004).

Hines has offered no direct evidence indicating any retaliatory motive by DiVenere. He cannot survive summary judgment by showing causation through evidence of retaliatory animus. See id. Importantly, there is no evidence that DiVenere had any knowledge of Hines' conversations with the four lieutenants prior to this lawsuit. As such, that speech cannot constitute evidence of retaliatory motive. See Morris, 196 F.3d at 113; see also Mandell v. County of

Suffolk, 316 F.3d 368, 384 (2d Cir. 2003).

As there is no direct evidence of causation, Hines can only survive summary judgment through circumstantial evidence. He attempts to do so by claiming his protected speech was followed so closely in time by adverse employment actions as to create an inference of causation. A plaintiff may establish causation indirectly by showing close temporal proximity between his speech and his employer's adverse actions, and there is no bright line establishing the outer limits of this temporal relationship. See Ciofi, 444 F.3d at 168. However, the Second Circuit has held that two years is too long a period of time to establish causation through temporal proximity without any accompanying direct evidence of retaliatory animus. Morris, 196 F.3d at 113-14.

Hines conversation with DiVenere regarding the need for a trained ERT negotiator was eight years prior to the distress call incident. This is too long a period to create an inference of retaliation. Hines does not recall the exact timing of his conversations with the four lieutenants regarding officer training in de-escalation techniques. At his April 4, 2006, deposition he estimated those conversations took place four to five years beforehand. [Doc. #26-2, Ex. 1, pg. 94] The distress call incident occurred on March 8, 2004, Spyros' report is dated April 6, 2004, and Hines' disciplinary hearing was held on May 10, 2004. Hines took the promotional exam for detective sergeant in June 2005. A period of at least two years passed between Hines' protected speech, namely his conversations with the lieutenants, and his disciplinary proceedings, and at least three years passed

11

before he took the detective sergeant's exam. Without any direct evidence to support his claim, this temporal link is too weak to support a claim of retaliation. Id.[4]

### 3. DiVenere's Non-Retaliatory Reasons for His Actions

Even if Hines could establish a prima facie case for First Amendment retaliation, the defendants are still entitled to summary judgment if they can show that DiVenere would have taken the same adverse employment action in the absence of the protected speech. Cotarelo v. Sleepy Hollow Police Dep't, 460 F.3d 247, 251-52 (2d Cir. 2006).

The defendants have offered convincing, undisputed evidence that DiVenere would have investigated Hines' handling of the distress call, disciplined him based on that conduct, and not promoted him to detective sergeant even without Hines' speech. It is undisputed that Britt independently confirmed the rumors of officer discontent regarding Hines' handling of the distress call and recommended an internal affairs investigation be opened into the matter after an independent investigation. The internal affairs investigation was not initiated at DiVenere's behest. Hines' only defense to this contention is the conclusory allegation that Britt was DiVenere's "right hand man." [Doc. #40, pg. 6] He offers absolutely no support for this statement, and in no other way challenges Britt's

---

[4]A period of approximately one year passed between Hines' complaints levied in the context of his 2004 disciplinary proceedings and the decision not to promote him in 2005. The court need not determine whether this time lapse could create an inference of retaliatory motive because, as explained above, that speech is not protected by the First Amendment.

12

reliability or credibility. The defendants have shown DiVenere would have initiated an internal affairs investigation into the distress call regardless of Hines' speech. Further, the two day suspension instituted by DiVenere following the disciplinary hearing was the sentence recommended by the union attorney who attended the hearing on Hines' behalf. At his request, DiVenere reduced the suspension to a written reprimand shortly thereafter. These facts are also undisputed. The defendants have shown DiVenere would have disciplined Hines' in the same manner had Hines never questioned BPD officer training.

It is also undisputed that the two officers promoted to detective sergeant were qualified for the position and had more experience with narcotics enforcement and involvement with the narcotics unit than did Hines. They both had perfect disciplinary records, whereas Hines had two serious infractions prior to Spyros' investigation including one for failure to supervise that is plainly relevant to a potential promotion to a supervisory position. Of the twenty two available supervisor recommendations, Hines received only four while the two promoted officers received nine and eight respectively. Hines provided no evidence of any issues involving any of the supervisors except for Spyros, and no other explanation for why they did not recommend him. It should be noted that Hines was promoted to detective sergeant only three months after the two officers chosen above him in the exam in question. He also took the sergeant's exam three times before successfully being promoted. The defendants have provided sufficient, undisputed evidence that DiVenere would have evaluated

Hines the same way and chosen to promote two other officers to detective sergeant over Hines even in the absence of any of Hines' speech. Hines has not offered facts in opposition to create a genuine issue for trial.

The defendants' motion for summary judgment as to the claim of First Amendment retaliation against DiVenere is GRANTED. Hines' conversations with his superiors in or before 2002 regarding the need for increased officer training addressed a matter of public concern. However, he cannot establish a causal link between that speech and the adverse employment actions he suffered. Hines' speech in the course and context of the disciplinary proceedings against him addressed only his personal situation and are not entitled to First Amendment protection. Further, the defendants have shown that DiVenere would have instituted the same adverse employment actions regardless of Hines' speech.

### B. Negligence

Hines alleges that Spyros acted negligently in conducting the investigation and compiling his report. The defendants seek summary judgment because they are entitled to statutory governmental immunity from claims based on negligence in the commission of a discretionary act pursuant to Connecticut General Statutes § 52-557n. That statute provides that government actors "shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion." Conn. Gen. Stat. § 52-557n(a)(2).

14

"A public officer has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. The hallmark of a discretionary act is that it requires the exercise of judgment. On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." Lombard v. Peters, 252 Conn. 623, 628 (Conn. 2000). Hines argues that Spyros' activities in investigating the distress call and compiling his report were ministerial because "the claim focuses on the mandatory portion of the internal affairs policy which states that the investigator must 'remain objective at all time and present a factual report to the Chief of Police.'" [Doc. 40, pg. 19] He cites to no legal authority for this proposition.

Hines' argument is not persuasive. He attempts to create a delineated job description creating a set of only ministerial tasks by applying a single statement out of context. If Hines' argument were to prevail, every public officer with a job description containing the most basic level of objectivity, reasonableness, or even performance goals could commit only ministerial acts and the statute conferring immunity would have no effect. This is not an accurate restatement of the law.

It is undisputed that it was within Spyros' discretion to: 1) choose how and from whom to identify the relevant evidence; 2) assign the credibility of each piece of evidence and witness statement; 3) finalize the content and form of his final report; 4) apply the discovered facts to the BPD code of conduct; and 5)

15

decide if a violation occurred. These are clearly discretionary acts. See id. ("Although the duties of a committee for sale are delineated by the court, the committee may exercise its discretion in performing certain of its tasks"). The motion for summary judgment as to Hines' claim of negligence against Spyros is GRANTED, as Spyros is statutorily immune from liability for negligence committed while conducting a discretionary act.[5]

### C. Indemnity by the City

Hines claims indemnity from the city for his First Amendment retaliation and negligence claims against DiVenere and Spyros pursuant to Connecticut General Statutes § 7-465. Since the court granted summary judgment to the defendants on the retaliation and negligence claims, Hines' claims for indemnity must also fail as a matter of law. There is nothing for the city to indemnify. Summary judgment must be GRANTED.

### IV. Conclusion

For the reasons stated above, the defendants' motion for summary judgment is GRANTED. Hines' speech is not entitled to First Amendment protection because it either did not address a matter of public concern or was not a substantial motivating factor in the adverse employment actions he suffered. Additionally, the defendants have presented undisputed evidence that shows

---

[5] Hines also attempts to avoid summary judgment by invoking the willful and wanton misconduct exception to public officer immunity. He cites no facts in support of this argument. Nevertheless, his claim against Spyros is explicitly one of negligence and fails as a matter of law.

DiVenere would have acted in the same way regardless of Hines' speech. Further, Spyros is entitled to statutory immunity from claims based on his negligence in carrying out a discretionary act. As the defendants are entitled to summary judgment on the claims against city employees, the city cannot be liable for indemnity for those acts.

The clerk shall terminate this action.

                                        IT IS SO ORDERED.

                                        _____/s/_____

                                        Vanessa L. Bryant

                                        United States District Judge

Dated at Hartford, Connecticut: March 13, 2008.